IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| KAINTE HICKEY,<br><br>        Plaintiff,<br><br>v.<br><br>CORRECTIONAL OFFICER STUMP;<br>CORRECTIONAL OFFICER NELSON;<br>CORRECTIONAL SERGEANT FOX;<br>ASSISTANT RESIDENT UNIT<br>SUPERVISOR CRAIG RITTER; DEPUTY<br>WARDEN NORMINGTON; DEPUTY<br>WARDEN JONES; and WARDEN RICHARD<br>McCARTHY;<br>        Defendants. | Case No.<br><br>JURY TRIAL DEMANDED<br><br>Related Case:  1:22-cv-00865-SJB<br>(closed) |

## COMPLAINT

Plaintiff, KAINTE HICKEY, by his undersigned attorneys, complains against the above-named Defendants as follows:

### I.      PARTIES

1.      Plaintiff Kainte Hickey is a resident of Michigan.  At the time of the events described in this complaint, he was imprisoned by the MDOC at multiple facilities.  He has since been exonerated of the crimes for which he was imprisoned.

2.      Defendant Correctional Officer Stump was a correctional officer of the Michigan Department of Corrections.

3.      Defendant Correctional Officer Nelson was a correctional officer of the Michigan Department of Corrections.

4.      Defendant Correctional Sergeant Fox was a correctional officer of the Michigan Department of Corrections.

1

5. Defendant Correctional Counselor Ritter was a correctional counselor of the Michigan Department of Corrections.

6. Defendant Deputy Warden Ritter was a correctional supervisor of the Michigan Department of Corrections.

7. Defendant Deputy Warden Normington was a correctional supervisor of the Michigan Department of Corrections.

8. Defendant Warden Richard McCarthy was a correctional supervisor of the Michigan Department of Corrections.

## II.  JURISDICTION AND VENUE

9. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a), as Plaintiff's causes of action are brought under the First Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), as one or more of the Defendants resides in this judicial district and a substantial part of the events or omissions giving rise to the claims asserted in this lawsuit occurred in this judicial district.

## III.  FACTS

11. At the times of the events in this complaint, Plaintiff Kainte Hickey was incarcerated with the Michigan Department of Corrections (MDOC) at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan.

12. On August 18, 2020, Defendants Stump and several other correctional officers slammed Mr. Hickey on the ground while he was handcuffed behind his back.

13. These correctional officers slammed Plaintiff so hard that he began to lose consciousness.

14. Several correctional officers then stripped Plaintiff and held him down while

Defendant Stump grabbed Plaintiff's penis and scrotum.

15. Then, after having the other Defendants flip Plaintiff over, Defendant Stump proceeded to force his fingers in Plaintiff's rectum, further causing pain and suffering.

16. Plaintiff filed grievances about this event, for the use of excessive force and for sexual assault under the Prison Rape Elimination Act (PREA).

17. Upon information and belief, Defendants Stump, Nelson, and Fox then devised a scheme to retaliate against Plaintiff for filing his grievances.

18. On June 13, 2021, Plaintiff was assaulted by another prisoner.

19. Upon information and belief, Defendant Stump ordered this attack, by instructing members of the other prisoner's gang to assault Plaintiff.

20. Plaintiff learned that the prisoner had not wanted to stab him, but Defendant Stump had given the order for the assault to the leader of the prisoner's gang.

21. Plaintiff asked Defendant Stump about the attack, but Defendant Stump responded with words to the effect of, I can do whatever I want to you here boy.

22. Defendant Stump then threatened to hurt Plaintiff if Plaintiff did not sign off/withdraw his PREA grievance against Stump for the 2020 assault.

23. Plaintiff refused to sign off or withdraw his PREA grievance.

24. Plaintiff contacted the prison's warden about this incident.

25. As a result of this attack Plaintiff was placed in segregation, ostensibly to transfer him to another facility for his own protection. Segregation cells are used by prisoners in detention pending a major court violation hearing.

26. In reality, however, Plaintiff was held in the detention cell under the guise that he was pending transfer, for 11 months.

27. When Plaintiff complained to the Security Classification Committee, he was told that if he wrote a grievance he would be held in segregation even longer.

28. Over 400 transfers were processed during the time Plaintiff was held in solitary confinement, but Plaintiff was not among those transferred. During that time Plaintiff was subject to the same punishments, restrictions, and denial of privileges as those on detention sanctions.

29. Also in 2021, Defendant Stump entered Plaintiff's cell while Plaintiff was in the shower. Defendant Stump dumped all Plaintiff's pictures, papers, and legal documents into the toilet, and otherwise trashed the cell.

30. When Plaintiff complained to Defendant Fox about this incident, Defendant Fox falsified Plaintiff's resolution of the grievance, forging Plaintiff's signature. Plaintiff had never signed off on the unresolved grievance. Before falsifying the withdrawal, Defendant Fox had tried to convince Plaintiff to withdraw the grievance himself, saying that Plaintiff's problems would go away if he withdrew the grievance.

31. On December 16, 2021, during breakfast rounds, Defendant Nelson gave Plaintiff a food tray that was missing a big portion of the food on the menu that day. When Plaintiff asked for the proper portion, Defendant Nelson stated in so many words that Plaintiff was not being provided with food because of the grievance he had written against Stump.

32. On December 16, 2021, Defendant Nelson pretended he was placing a food tray in Plaintiff's cell through the slot food slot. When Plaintiff reached for the tray, however, Defendant Nelson pulled the tray back, stating words to the effect of, Stump sends his regards, no food for you.

33. Later that day Defendant Stump made a round in segregation and stopped at Plaintiff's cell, mocking Plaintiff for eating "food loaf." Defendant Stump told Plaintiff that he

(Stump) was untouchable at the prison and grievances would do nothing—stating words to the effect that "I wipe my ass" with grievances, and that Stump could have Plaintiff "touched," or hurt, anytime Stump wanted.

34. Defendant Nelson issued Plaintiff a false misconduct report, requesting that Plaintiff receive a seven-day punishment of food loaf. The misconduct report was for misuse of a food tray, but Plaintiff had never been provided with a food tray that he could misuse. In reality, on information and belief, the false misconduct report was designed to punish Plaintiff for writing a grievance about Defendant Stump's assault and sexual harassment.

35. Defendants Stump, Nelson, and Fox's conspiracy continued throughout Plaintiff's eleven months in solitary confinement; during this time none of these three defendants did anything to stop Plaintiff's unwarranted, extended solitary confinement. Instead, they allowed it to continue in order to retaliate against Plaintiff for grieving the 2020 sexual assault in which Defendant Stump participated.

36. Plaintiff's family contacted four different supervisors at the prison, alerted them that Plaintiff was being retaliated against, and asked them to intervene. Each of these four defendants had the power and position to intervene, but none of them intervened to put an end to the retaliation against Plaintiff by Defendants Stump, Nelson, and Fox. The four supervisor-Defendants were Defendants Ritter, Normington, Jones, and McCarthy.

## COUNT I:

### Against all Defendants

37. Each paragraph of this complaint is incorporated as if fully restated here.

38. By slamming Plaintiff and sexually assaulting him, the Defendants inflicted cruel and unusual punishment on Plaintiff.

39. By holding Plaintiff in solitary confinement for years on end, Defendants caused great mental anguish.

40. Defendants conspired to keep Plaintiff in solitary confinement for no legitimate penological purpose.

41. Rather, the Defendants had Plaintiff placed in extended solitary confinement, and performed the other cruel acts described in this complaint, in order to retaliate against him for filing grievances in violation of his rights to free speech and to petition the government.

42. **RELIEF REQUESTED**

**WHEREFORE**, Plaintiff Kainte Hickey respectfully requests judgment against Defendants, jointly and severally, for the following:

A. An award of compensatory, punitive, and nominal damages;

B. An award of full costs and attorneys' fees arising out of this litigation pursuant to 42 U.S.C. § 1988 and any other applicable law; and

C. Provide any other further relief this Court may deem just and appropriate.

43. **DEMAND FOR JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury in this action of all issues so triable.

Dated: April 30, 2024                    Respectfully submitted,

/s/ *Rachel Brady*

Rachel Brady
Stephen Weil (*pro hac vice* pending)
Maria Makar (*pro hac vice* pending)
Loevy & Loevy
311 N. Aberdeen Street
Third Floor
Chicago, IL 60607

312-243-5900
brady@loevy.com

*Counsel for Plaintiff*