UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KAINTE HICKEY #342571,

    Plaintiff,                                   Hon. Robert J. Jonker

v.                                                Case No. 1:24-cv-449

UNKNOWN STUMP, et al.,

    Defendants.

_____/

**REPORT AND RECOMMENDATION**

       Plaintiff Kainte Hickey, formerly a prisoner incarcerated with the Michigan Department of Corrections (MDOC), initiated this action under 42 U.S.C. § 1983 through counsel on April 30, 2024, against the following MDOC employees based on events that occurred while Plaintiff was incarcerated at the Bellamy Creek Correctional Facility (IBC) from 2020 to 2022: Gary Stump, Jesse Nelson, Kyle Fox, Craig Ritter, Laura Normington, and Sabrina Jones. Plaintiff also sued Warden Richard McCarthy, however, no such person served as Warden at IBC during that time. Thus, the current warden at IBC, Matthew Macauley, was substituted for Defendant Richard McCarthy. (ECF No. 34 at PageID.102–03 n.1; ECF No. 42 at PageID.246 n.1.)

       Presently before me is Defendants' Motion to Dismiss, which is fully briefed and ready for decision. Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the motion be **GRANTED IN PART AND DENIED IN PART.**

## I. Background

### A.    Complaint Allegations

Plaintiff alleges that his "causes of action are brought under the First Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983." (ECF No. 1 at PageID.2.) Factually, the allegations begin on August 18, 2020. Plaintiff alleges that on that date, while he was handcuffed behind his back, Defendant Stump and several other non-party corrections officers slammed him to the ground so hard that he began to lose consciousness. He further alleges that several corrections officers then stripped him and held him down while Stump grabbed his penis and scrotum. After having several officers turn Plaintiff over, Stump forced his fingers into Plaintiff's rectum, causing pain and suffering. (ECF No. 1 at PageID.2–3.)

Plaintiff filed grievances and a Prison Rape Elimination Act (PREA) complaint regarding the August 18, 2020 event for the excessive use of force and sexual assault. On June 13, 2021, Plaintiff was assaulted by another prisoner. Plaintiff alleges that he learned that the other prisoner did not want to stab Plaintiff, but Defendant Stump had ordered members of the other prisoner's gang to assault Plaintiff. When Plaintiff asked Stump about the attack, Stump responded, "I can do whatever I want to you here boy." (*Id.* at PageID.3.) Defendant Stump then threatened to hurt Plaintiff if he did not sign off his PREA grievance regarding the August 2020 assault. Plaintiff refused to sign off the PREA grievance and contacted the warden about the incident. (*Id.*)

Plaintiff was placed in segregation because of the attack, where he remained for 11 months pending a transfer to another facility. When Plaintiff complained to the Security Classification Committee (SCC), he was told that if he wrote a grievance, he would spend more time in segregation. Plaintiff alleges that, during his time in segregation, over 400 other transfers were

processed, while Plaintiff remained in segregation "subject to the same punishments, restrictions, and denial of privileges as those on detention sanctions." (*Id.* at PageID.3–4.)

Plaintiff alleges that, sometime during 2021, Defendant Stump entered his cell while he was in the shower and dumped his pictures, papers, and legal documents into the toilet and trashed Plaintiff's cell. When he complained to Defendant Fox about the incident, Defendant Fox forged Plaintiff signature on the grievance, falsely indicating that Plaintiff had signed off on it. (*Id.* at PageID.4.)

Plaintiff alleges that on December 16, 2021, during breakfast rounds, Defendant Nelson shorted Plaintiff "a big portion of the food on the menu that day." When Plaintiff asked Nelson about the missing food, Nelson suggested that the food was withheld due to Plaintiff's grievance against Stump. Later that day, when Nelson was placing a lunch food tray into Plaintiff's cell through the food slot, Nelson pulled the tray back from Plaintiff and said, "Stump sends his regards[;] no food for you." Later that day, Stump appeared at Plaintiff's cell during rounds and mocked Plaintiff for eating "food loaf." Stump told Plaintiff that he (Stump) "was untouchable at the prison and grievances would do nothing." Stump further said, "'I wipe my ass' with grievances," and told Plaintiff that he could have Plaintiff "'touched,' or hurt, anytime [he] wanted." (*Id.* at PageID.4–5.)

Plaintiff alleges that Defendant Nelson issued him a false misconduct report for misuse of a food tray, requesting a sanction of seven days' food loaf in retaliation for Plaintiff writing grievances about Defendant Stump's assault and sexual harassment. (*Id.* at PageID.5.)

Plaintiff alleges that, during the 11 months he was held in protective custody in segregation, Defendants Stump, Nelson, and Fox engaged in a conspiracy to retaliate against Plaintiff for his grievances against Stump for the 2020 sexual assault. He claims that, as part of this conspiracy,

they failed to stop the extended segregation. Plaintiff alleges that his family contacted four different supervisors at the prison—Defendants Ritter, Normington, Jones, and Macauly—about the retaliation by Defendants Stump, Nelson, and Fox, but the supervisors failed to intervene to end the retaliation. (*Id.*)

Plaintiff asserts a single count in his complaint against all Defendants, which alleges the following:

- "By slamming Plaintiff and sexually assaulting him, the Defendants inflicted cruel and unusual punishment on Plaintiff."
- "By holding Plaintiff in solitary confinement for years on end, Defendants caused great mental anguish."
- "Defendants conspired to keep Plaintiff in solitary confinement for no legitimate penological purpose."
- "Rather, the Defendants had Plaintiff placed in extended solitary confinement, and performed the other cruel acts described in this complaint, in order to retaliate against him for filing grievances in violation of his rights to free speech and to petition the government."

(*Id.* at PageID.5–6.)

### B. The Video Evidence

In support of their motion to dismiss, as well as their claim of entitlement to qualified immunity, Defendants have submitted a video of the August 20, 2020 incident giving rise to Plaintiff's claim of being slammed to the ground and sexually assaulted. The video has no sound.

The video opens with officers escorting Plaintiff to A-wing base for a clothed body search. As the officers prepare for the search, another officer sets up a Cellsense detector.[1] Defendant Stump then steps in front of Plaintiff, lowers his mask, and conducts a mouth check that produces no contraband. Defendant Stump attempts to search Plaintiff's front, but Plaintiff leans forward as if to shield his body from the search. Defendant Stump then gestures to Plaintiff to stand up

---

[1] A Cellsense detector is a pole-like device that detects the presence of cell phones.

straight, but Plaintiff fails to do so and continues to lean forward, apparently to obstruct the search. Defendant Stump and three or four other officers then take Plaintiff to the floor, where Stump and five officers attempt to control him. The officers hold Plaintiff down while hovering over him. During the search, the officers discovered a cell phone and other contraband items on Plaintiff. (ECF 36-6 at PageID.192, 203.) After about a minute, the officers remove Plaintiff's boxer shorts. Around 3:17:23 on the video, the officers appear to roll Plaintiff on his side. Around 3:17:45, the officers stand Plaintiff up but then take him to the ground again about 25 seconds later, apparently to gain control of him. After about 30 seconds, the officers stand Plaintiff up and escort him out of the area. Plaintiff was then placed in the security module in the unit 1 property unit and then escorted to unit 8 without incident.

      **C.**      **Plaintiff's Prior Action (Case No. 1:22-cv-865)**

On September 19, 2022, Plaintiff filed a pro se complaint against Defendants Stump, Nelson, Fox, Ritter, Normington, Jones, and Unknown Parties ##1–4 based on the same events at issue in the present case that occurred at IBC from 2020 through 2022. With the exception of his new allegation in his present complaint about his family members contacting Defendants Ritter, Normington, Jones, and Macauley and requesting them to intervene to stop the alleged retaliation, the allegations here essentially mirror those in Plaintiff's prior pro se complaint.

On October 21, 2022, the Court reviewed the complaint under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. § 1915A(b), and 42 U.S.C. § 1997e(c), Case No. 1:22-cv-865, ECF No. 5, and ruled as follows: (1) the official capacity claims for monetary damages were barred by the Eleventh Amendment, *id.* at PageID.32–33; (2) the claims against Defendants Jones, Normington, and Ritter, whom Plaintiff identified as SCC members, were subject to dismissal because Plaintiff failed to allege that they engaged in

active unconstitutional behavior and they could not be held liable on a theory of supervisory liability because Plaintiff alleged no facts showing that they "encouraged or condoned the conduct of their subordinates, or authorized, approved, or knowingly acquiesced in the [alleged unconstitutional] conduct," *id.* at PageID.33–34; (3) Defendant Fox's conduct of falsifying Plaintiff's signature on a grievance did not give rise to due process or First Amendment right-to-petition claims, *id.* at PageID.35–36; (4) Plaintiff stated valid First Amendment retaliation claims against Defendants Stump and Nelson, but not against Fox and SCC members Jones, Normington, and Ritter, *id.* at PageID.36–41; (5) Plaintiff failed to allege a Fourth Amendment claim based on Stump entering his cell and throwing his property into the toilet, *id.* at PageID.41–42; (6) Plaintiff stated Eighth Amendment excessive force/sexual assault and deliberate indifference claims against Stump based on the August 18, 2020 incident and the June 13, 2021 assault on Plaintiff by another prisoner but failed to state Eighth Amendment claims against Defendant Nelson for withholding of food and placement on food loaf and an Eighth Amendment claim for placement in segregation, *id.* at PageID.43–47; and (7) Plaintiff failed to state due process claims against Defendant Stump for trashing his cell and throwing his documents and pictures into the toilet and against Defendant Nelson for issuing him a false misconduct ticket, *id.* at PageID.48–51. The action was allowed to proceed on Plaintiff's First Amendment retaliation claims against Defendants Stump and Nelson and Plaintiff's Eighth Amendment claims against Defendant Stump. *Id.* at PageID.51–52.

On November 9, 2023, the Court dismissed the case without prejudice for lack of prosecution based on Plaintiff's failure to keep the Court apprised of his current address. *Id.*, ECF Nos. 19 and 20.

## II. Motion Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim must be dismissed for failure to state a claim on which relief may be granted unless the "[f]actual allegations [are] enough to

raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal citations and footnote omitted). As the Supreme Court has held, to satisfy this rule, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the complaint simply "pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted). As the Court further observed:

> Two working principles underlie our decision in Twombly. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief."

*Id.* at 678–79 (internal citations omitted).

In support of certain aspects of their motion to dismiss, Defendants have attached several exhibits to their brief and have also submitted a video. In general, when deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court's review is limited to the four corners of the pleading at issue. Fed. R. Civ. P 12(d); *see also Courser v. Michigan House of Representatives*, 404 F. Supp. 3d 1125, 1139 (W.D. Mich. 2019) (noting that "[i]n general, in deciding a Rule 12(b)(6) motion to dismiss the court is limited to considering only the pleadings") (citing *Rondigo, LLC v. Twp. of Richmond*, 641 F.3d 673, 682 (6th Cir. 2011)). Nonetheless, it is

well established that, in some circumstances, a court may consider matters beyond the pleadings without converting the motion to one for summary judgment under Rule 56. Examples include "any exhibits attached [to the Complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008). The filings from Case No. 1:22-cv-865 attached as Exhibits A–D are properly considered as they are matters of public record and come from the Court's own docket. In addition, the documents pertaining to Plaintiff's PREA grievance against Defendant Stump attached as Exhibit E are properly considered because Plaintiff referred to his PREA grievance in his complaint, and it is central to his retaliation claim. *See Park v. Holdren*, No. 17-cv-439, 2018 WL 1901798, at *2 (S.D. Ohio Apr. 20, 2018), *report and recommendation adopted*, 2018 WL 3648234 (S.D. Ohio Aug. 1, 2018) (considering grievance documents referenced in the complaint that reiterated the plaintiff's claim that he was exposed to sewage water for 12 hours); *Chandler v. Hawkins*, No. 5:16-CV-79, 2017 WL 1319831, at *2 n.2 (W.D. Ky. Apr. 6, 2017) ("Here, Chandler references the IGP as well as his grievances in his complaint, and these items are central to his claims, so the Court may consider them without converting Defendants' motion into one for summary judgment."); *Walker v. Crowell*, No. 2:14-CV-234, 2017 WL 663093, at *1 n.1 (E.D. Tenn. Feb. 15, 2017) (considering the plaintiff's medical records and grievances referenced in the complaint).

In addition, because Defendants have raised the defense of qualified immunity, the video evidence may be considered. The Sixth Circuit has made clear that district courts may consider video evidence in deciding qualified immunity issues at the motion to dismiss stage:

> In qualified-immunity cases, we've previously considered videos at the motion-to-dismiss stage. *See, e.g., Bailey v. City of Ann Arbor*, 860 F.3d 382, 387 (6th Cir.

2017). And for good reason. Qualified immunity isn't just a defense to liability— it's immunity from the costs and burdens of suit in the first place. *Scott v. Harris*, 550 U.S. 372, 376 n.2, 127 S. Ct. 1769, 167 L.Ed.2d 686 (2007); *Pearson v. Callahan*, 555 U.S. 223, 237, 129 S. Ct. 808, 172 L.Ed.2d 565 (2009). If officers are entitled to qualified immunity and don't receive it at the earliest possible stage, then they lose its protections for as long as they continue to litigate. *Crawford v. Tilley*, 15 F.4th 752, 763 (6th Cir. 2021) (highlighting the importance of applying qualified immunity even before discovery); *see Scott*, 550 U.S. at 376 n.2, 127 S. Ct. 1769. So when uncontroverted video evidence easily resolves a case, we honor qualified immunity's principles by considering the videos.

*Bell v. City of Southfield*, 37 F.4th 362, 364 (6th Cir. 2022). The limitation, of course, arises when the video does not resolve the issue, and a factual dispute remains. In such cases, the plaintiff's version of events must control. *Id.* (citing *Scott*, 550 U.S. at 380).

### III. Discussion

#### A.  Claim Preclusion

Defendants first contend that Plaintiff's retaliation claims against Defendants Jones, Normington, Ritter, and Fox are barred by the doctrine of res judicata based on the screening dismissal in the prior action. Res judicata, or claim preclusion, provides that "a valid and final judgment on a claim precludes a second action on that claim or any part of it." *J.Z.G. Res., Inc. v. Shelby Ins. Co.*, 84 F.3d 211, 214 (6th Cir. 1996). The elements of claim preclusion are: (1) a final decision on the merits in the prior action; (2) the present action is between the same parties or their privies as those to the prior action; (3) the claim in the present action should have been litigated in the prior action; and (4) an identity exists between the present and prior actions. *Mitchell v. Chapman*, 343 F.3d 811, 819 (6th Cir. 2003) (citing *Kane v. Magna Mixer Co.*, 71 F.3d 555, 560 (6th Cir. 1995)).

Only the second element is at issue here. Defendants contend that, because the prior screening dismissal was based on Federal Rule of Civil Procedure 12(b)(6), and the claims against Defendants Jones, Normington, Ritter, and Fox were dismissed with prejudice, the screening order

9

for partial dismissal pursuant to 28 U.S.C. § 1915(e) qualifies as an adjudication on the merits. *See Smith v. Morgan*, 75 F. App'x 505, 507 (6th Cir. 2003) (citing *Denton v. Hernandez*, 504 U.S. 25, 34 (1992)) ("The dismissal of Smith's prior lawsuit under § 1915(e) constitutes an adjudication on the merits for purposes of res judicata."); *Hill v. Elting*, 9 F. App'x 321, 321 (6th Cir. 2001) (noting that the Section 1915(e) dismissals of the plaintiff's two prior actions had res judicata effect).

Plaintiff disagrees, citing *Johnson v. Miller*, No. 1:20-cv-791, 2020 WL 5677395 (W.D. Mich. Sept. 24, 2020). The circumstances in *Johnson* were similar to those presented here. The plaintiff had filed an earlier action concerning the same events in the Eastern District of Michigan. The Eastern District dismissed with prejudice the claims against three defendants on initial screening for failure to state a claim. Before service on the other defendants, the case was transferred to this district due improper venue. The court eventually dismissed the case without prejudice for lack of prosecution due to the plaintiff's failure to provide service copies of the complaint. *Id.* at *2. The plaintiff then filed a new case naming the same defendants from the prior case. On initial review, the court dismissed the same three individuals for failure to state a claim on the same grounds. *Id.* at *3–4. While the court did not expressly consider the application of claim preclusion to the three defendants, in a footnote it observed that because the final order dismissing the prior action was without prejudice, the Eastern District's prior order of partial dismissal had no preclusive effect. *Id.* at *3 n.2.

In reply, Defendants cite *Frazier v. Lindsey*, No. 19-10389 (E.D. Mich. July 8, 2019). In *Frazier*, the court entered an order following initial review of the complaint dismissing the pro se prisoner's claims against most of the 35 defendants, including Kisor and Purdy, with prejudice for failure to state a claim. 2019 WL 2996170, at *6. The court ultimately dismissed the action without prejudice based on the plaintiff's failure to exhaust his administrative remedies against the two

10

remaining defendants. 2022 WL 21852358, at *4–5. Subsequently, the plaintiff filed another action naming Kisor and Purdy asserting claims based on the same conduct but under different a different legal theory. The court found that the prior dismissal with prejudice in Case No. 19-10389 constituted a final decision on the merits as to Kisor and Purdy. *Frazier v. Kisor*, No. 19-12419, 2021 WL 3417920, at *1, 3 (E.D. Mich. Aug. 5, 2021).

I find another decision from this district instructive. In *Annabel v. Michigan Department of Corrections*, No. 1:16-cv-543, 2016 WL 5956252 (W.D. Mich. Oct. 14, 2016), *aff'd in part, vacated in part on other grounds, and remanded*, 2017 WL 11639427 (6th Cir. Oct. 2, 2017), the pro se prisoner-plaintiff had filed an earlier action, *Annabel v. Michigan Department of Corrections*, 1:14-cv-756, 2014 WL 4187675 (W.D. Mich. Aug. 21, 2014), which asserted many of the same allegations against many of the same defendants named in the later action. Many of the claims and defendants in the previous action were dismissed with prejudice on initial screening. 2014 WL 4187675, at *1, 22; *see* 2016 WL 5956252, at *1–2. The remaining claims and defendants were subsequently dismissed without prejudice for lack of prosecution. *Id.* at *1 & 1 n.2. The court found that both claim and issue preclusion applied to the prior dismissals. *Id.* at *10–11. The plaintiff appealed the court's judgment to the Sixth Circuit, specifically challenging the dismissal of the previously-dismissed claims as barred by res judicata. 2017 WL 11639427, at *2–3. In particular, the plaintiff argued that he was not afforded notice and a full opportunity to object to the district court's prior dismissal of those claims or a chance to amend his complaint. *Id.* at *2. The Sixth Circuit disagreed, finding that res judicata barred not only the claims against the previously-dismissed defendants, but also the claims against several additional defendants in the later action because the plaintiff had a full and fair opportunity to raise the claims in the prior action. *Id.* at *3.

11

I recommend that the Court follow *Annabel* and *Frazier* and conclude that Plaintiff's claims against Defendants Jones, Normington, Ritter, and Fox are barred by claim preclusion based on the prior dismissal with prejudice. The footnote in *Johnson* is not persuasive. First, it was dictum, as the court dismissed the previously-dismissed defendants on the merits. Second, the case cited in the footnote, *Hall v. Gibson Greetings, Inc.*, 971 F. Supp. 1162 (S.D. Ohio 1997), cited by *Infocision Management Corp. v. Foundation for Moral Law, Inc.*, Nos. 5:08 cv 1342, 5:08 cv 1412, 2009 WL 650282 (N.D. Ohio Jan. 14, 2009), was based entirely on Ohio state law regarding the res judicata effect of voluntary dismissals. Neither *Hall* nor *Infocision Management* involved a dismissal with prejudice pursuant to mandatory review of a case governed by the PLRA. As *Annabel* indicated, a previous PLRA screening dismissal with prejudice for failure to state a claim is effectively merged into the ultimate judgment, resulting in a frivolous determination in any subsequent action based on res judicata. 2016 WL 5956252, at *11.

### B.     Supervisory Liability

Aside from claim preclusion, Defendants argue that Plaintiff's supervisory liability claims against Ritter, Normington, Jones, and Macauley should be dismissed because Plaintiff fails to allege that they were personally involved in the alleged retaliation. As noted, the supervisory liability claims against Defendants Jones, Normington, and Ritter in the prior action based upon essentially the same facts Plaintiff allege here were dismissed because Plaintiff failed to allege that they encouraged or condoned the acts of their subordinates, or authorized, approved, or knowingly acquiesced in the conduct. Case No. 1:22-cv-865, ECF No. 5 at PageID.34.

The only difference is that Plaintiff now alleges that his family contacted these Defendants asking them to intervene, but they failed to act. (ECF No. 1 at PageID.5.) This additional allegation fails to state a claim. A supervisory official who is aware of the unconstitutional conduct of his or her subordinates yet fails to act generally cannot be held liable under Section 1983. *Shehee v.*

*Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 727–28 (6th Cir. 1996). That is, "supervisory liability under § 1983 cannot attach where the allegation of liability is based upon a mere failure to act. Instead the liability must be based upon active unconstitutional behavior." *Salehpour v. University of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998). To survive a motion to dismiss, a plaintiff must allege that the supervisory defendant "encouraged the specific incident of misconduct or in some other way directly participated in it." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). The conduct Plaintiff alleges does not meet this requirement. *See Horton v. Martin*, 137 F. App'x 773, 775 (6th Cir. 2005) (prisoner's claim that the Director of the MDOC failed to remedy the situation after being informed of the problem properly dismissed); *Davis v. Sapp*, No. 99-5769, 2000 WL 572067, at *2 (6th Cir. May 1, 2000) (claim against non-medical prison officials for failing to intervene after being informed of deficiencies in the plaintiff's medical treatment properly dismissed for failure to state a claim).

Plaintiff's reliance on *Garza v. Lansing School District*, 972 F.3d 853 (6th Cir. 2020), to support his supervisory liability claim is misplaced. The *Garza* court reaffirmed that supervisory liability requires "some active unconstitutional behavior," although the behavior need not be "active" in the sense of requiring physical contact or physical presence at the time of the alleged violation. *Id.* at 865. The court noted, however, that "mere negligence" will not suffice; rather, the defendant's conduct must amount to deliberate indifference. *Id.* at 866–67. Plaintiff fails to allege any fact demonstrating that the conduct of Defendants Ritter, Normington, Jones, or Macauley amounted to deliberate indifference. Thus, this claim should be dismissed.

### C. Conspiracy Allegations

Plaintiff's present complaint includes allegations that Defendants engaged in a conspiracy to retaliate against Plaintiff. As Defendants argue, Plaintiff's vague allegations do not suffice to

13

state a conspiracy claim. A civil conspiracy under Section 1983 is "an agreement between two or more persons to injure another by unlawful action." *Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged co-conspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Id.*; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). The Sixth Circuit has held that "vague and conclusory allegations, unsupported by material facts, are not sufficient to state a conspiracy claim under § 1983." *Becker v. Clinton*, No. 99-3811, 2000 WL 553911, at *1 (6th Cir. Apr. 28, 2000) (citing *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)). Here, other than alleging separate, unrelated acts by Defendants Stump, Nelson, and Fox, Plaintiff provides nothing more than conclusory assertions that a conspiracy existed.

Any conspiracy claim fails as well because it is barred by the intercorporate conspiracy doctrine. The intracorporate conspiracy doctrine states that if "all of the defendants are members of the same collective entity, there are not two separate 'people' to form a conspiracy." *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 510 (6th Cir. 1991). Initially applied to claims under 42 U.S.C. § 1985(3), *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839–40 (6th Cir. 1994) (quoting *Hull*, 926 F.2d at 510), the Sixth Circuit has concluded that the intracorporate conspiracy doctrine applies to claims under Section 1983 as well. *Jackson v. City of Cleveland*, 925 F.3d 793, 817–19 (6th Cir. 2019). As a result, unless members of the same collective entity (such as the MDOC) are acting outside the scope of their employment, they are deemed to be one collective entity and not capable of conspiring. *Id.* at 819; *see also Novak v. City of Parma*, 932 F.3d 421, 436–37 (6th Cir. 2019) (same). Because Defendants Stump, Nelson,

and Fox were all employed by the MDOC and acting within the scope of their employment, Plaintiff may not maintain a conspiracy claim against them.

### D.  Official Capacity Claims

Defendants contend that, although Plaintiff does not indicate in his complaint whether he sues Defendants in their official capacities, such claims for money damages are barred by the Eleventh Amendment. Plaintiff fails to respond to this argument. In any event, Plaintiff's official capacity claims were dismissed in his previous action, and because he requests only damages in this action, they should be dismissed here as well.

### E.  Qualified Immunity

Defendants Stump, Nelson, and Fox contend that they are entitled to qualified immunity on Plaintiff's retaliation claim. The doctrine of qualified immunity provides that government officials performing discretionary functions are generally shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional right of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999). An "objective legal reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). The qualified immunity inquiry requires a court to decide whether the facts as alleged or shown make out a constitutional violation and whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). If the court can conclude either that no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either prong of the inquiry without regard to sequence. *Id.* at 236.

Defendants contend that dismissal on the first prong of qualified immunity is appropriate because Plaintiff cannot establish a retaliation claim, which requires a plaintiff to show that (1) he engaged in protected conduct; (2) the defendant took an adverse action against him "that would deter a person of ordinary firmness from continuing to engage in that conduct;" and (3) the adverse action was taken (at least in part) because of the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). That is, Defendants argue that Plaintiff cannot show that he was engaged in protected conduct because his grievance was frivolous. A frivolous grievance does not constitute conduct protected by the First Amendment. *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010). More specifically, Defendants contend that the video evidence clearly refutes Plaintiff's PREA grievance allegations that Defendant Stump and the other officers "slammed" him to the ground and that Stump stuck his fingers in Plaintiff's rectum while officers forcibly spread his buttocks. Thus, they contend that Plaintiff has no viable retaliation claim because his grievance was frivolous.

Contrary to Defendants' assertion, the video does not refute all of Plaintiff's allegations. While it depicts the incident Plaintiff describes in his complaint, it does not show everything that occurred during the search. What it does show is that Defendant Stump and the officers did not slam Plaintiff to the ground; there is no discernable slamming that would constitute excessive force. Rather, four or five officers grabbed and placed Plaintiff on the ground to conduct the search. What the video does not clearly and affirmatively show is that Defendant Stump and other officers merely spread Plaintiff's buttocks and that Defendant Stump did not stick his fingers into Plaintiff's rectum. Many factors—the distance of the camera, the angle, the number of officers obscuring the view, and lack of light—make it difficult to determine what was happening. Thus, Defendants are not entitled to qualified immunity based on the video evidence.

Nonetheless, Defendant Fox is entitled to qualified immunity because Plaintiff fails to allege a valid retaliation claim against him. The only action Plaintiff alleges against Fox was forging Plaintiff's signature to indicate that Plaintiff had signed off on a grievance. As the screening opinion in the prior case explained in dismissing the retaliation claim against Fox, such an act does not amount to adverse action. Case No. 1:22-cv-865, ECF No. 5 at PageID.38–39. Therefore, Plaintiff's claim against Defendant Fox is again properly dismissed.

In addition, as set forth in the prior screening opinion, to the extent Plaintiff asserts that SCC members Jones, Normington, and Ritter retaliated against him by holding him in segregation for 11 months because of his protected conduct (the PREA grievance against Stump), his claim is subject to dismissal because his allegations of retaliatory motive are entirely conclusory. *Id.* at PageID.40–41.

    **F.**    **Remaining Claims and Amendment**

Defendants contend that First Amendment retaliation is the sole claim Plaintiff alleges in his complaint. If so, and if the Court adopts the foregoing recommendations, Plaintiff's remaining claims will be his retaliation claims against Defendants Stump (arranging the July 2021 attack and searching Plaintiff's cell) and Nelson (withholding food and writing a false misconduct).

Plaintiff, on the other hand, contends that the complaint alleges both Eighth Amendment and Fourteenth Amendment claims. I disagree. Plaintiff is no longer proceeding pro se and is not entitled to liberal construction of his pleading. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). Rather, his complaint is held to standards applicable to counsel-drafted pleadings. The complaint expressly limits its "causes of action" to the First Amendment; nowhere does it mention the Eighth or Fourteenth Amendment or due process. At best, Plaintiff's allegation in paragraph 37 may be considered an Eighth Amendment excessive force and sexual assault claim against Defendant

Stump. If the Court concludes that is so, the excessive force part of the claim should be dismissed as refuted by the video evidence.

Finally, in his response, Plaintiff requests permission for leave to amend. I have disregarded this request because it is not a proper motion. *See Cox v. Blue Cross Blue Shield of Mich.*, 166 F. Supp. 3d 891, 900 n. 6 (E.D. Mich. 2015) (citing *Begala v. PNC Bank, Ohio, N.A.*, 214 F.3d 776, 784 (6th Cir. 2000)) (noting that "a request for leave to amend within a responsive brief is not sufficient to properly place the issue of amendment before a district court").

### IV. Conclusion

For the reasons set forth above, I recommend that the Court **grant in part and deny in part** Defendants' motion to dismiss (ECF No. 34) as follows: (1) dismiss all claims against Defendants Jones, Normington, Ritter and Fox as barred by claim preclusion and/or dismiss the supervisory liability claims against Defendants Ritter, Normington, Jones, and Macauley for failure to state a claim and/or dismiss the retaliation claims against Defendants Jones, Normington, Ritter, and Fox for failure to state a claim; (2) dismiss the conspiracy allegations; (3) dismiss all official capacity claims; (4) allow the retaliation claims against Defendants Stump and Nelson to proceed; and (5) if the Court construes paragraph 37 as asserting an Eighth Amendment claim, dismiss the excessive force aspect but allow the sexual assault aspect of the claim to proceed.

Dated: February 13, 2025  /s/ Sally J. Berens
SALLY J. BERENS
U.S. Magistrate Judge

### NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file

objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).